IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JESSICA M. SAUNDS, as Surviving Spouse and Administrator of the Estate of COURSON SAUNDS, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>RODERICK L. WASHINGTON; JIM BENDER, INC.; RASULJON ABDUNAZAROV; BREX TRANS, INC.; NATIONAL CONTINENTAL INSURANCE CO. d/b/a PROGRESSIVE INSURANCE COMPANY; XYZ COMPANIES 1-3,<br><br>    Defendants. | CIVIL ACTION NO.: 4:23-cv-280 |

**O R D E R**

Plaintiff Jessica Saunds, as the surviving spouse and administrator of the estate of her husband Courson Saunds, sued Roderick Washington; Jim Bender, Inc.; Rasuljon Abdunazarov; Brex Trans, Inc.; National Continental Insurance Company; Zurich American Insurance; and XYZ Companies 1–3. (Doc. 1-1.) The action alleges Defendants are liable for Courson Saunds's death in a September 2021 automobile collision as well as associated injuries to Plaintiff. (Id.) Before the Court is the Motion for Summary Judgment of Defendants Abdunazarov, Brex Trans, Inc., and National Continental Insurance Company ("Defendants"). (Doc. 41.) Defendants argue summary judgment is proper because of Courson Saunds's intervening negligence and Plaintiff's failure to prove causation. (Id. at pp. 10–19.) Plaintiff filed a Response, (doc. 43), and Defendants filed a Reply, (doc. 47). (Id.) For the reasons below, the Court **DENIES** Defendants' Motion for Summary Judgment. (Doc. 41.)

# BACKGROUND

I. **Factual Background**

On September 8, 2021, Rasuljon Abdunazarov was employed by Brex Trans as the driver of a tractor-trailer, and National Continental Insurance Company "covered [] Brex Trans and its employees with a policy of insurance." (Doc. 41-6, pp. 1–2; doc. 43-3, p. 2.) Around midnight, while driving in the course of his employment with Brex Trans, Abdunazarov's tractor-trailer was involved in an automobile collision on Interstate 95 in Liberty County, Georgia. (Doc. 41-6, pp. 1–2; doc. 43-3, p. 2.) The wreck "caused traffic to back up on Interstate 95 for some distance." (Doc. 41-6, p. 2; doc. 43-3, p. 2.) "Several hours" after the crash, Roderick Washington, driving on Interstate 95 in the course of his employment with Jim Bender, Inc., approached this scene and stopped his own tractor-trailer about one mile from the site of the collision. (Doc. 41-6, p. 2; doc. 43-3, p. 2.) Subsequently, Courson Saunds "ran into the rear" of Washington's trailer with his vehicle and "was pronounced dead at the scene of the accident as a result of the injuries he sustained in that accident." (Doc. 41-6, pp. 1–2; doc. 43-3, p. 2.)

Washington later testified that he stopped his tractor-trailer because he "saw traffic slowly coming to a standstill." (Doc. 41-6, p. 3; doc. 43-3, p. 2.) Washington also stated that, at the time of the second collision, his tractor-trailer's hazard lights were activated and visible, there was "no traffic in the right lane of Interstate 95," and his tractor-trailer had been at a complete stop for "maybe like two or three minutes." (Doc. 41-6, p. 3; doc. 43-3, p. 2.)

An investigating officer, "Corporal Kerrick," testified that Washington's tractor-trailer was in the center lane of Interstate 95 when the collision with Saunds occurred. (Doc. 41-6, p. 4; doc. 43-3, p. 2.) "Trooper Jones," who responded at the scene of both collisions, stated that "he was able to keep the far left lane open during his work" on the first collision involving Abdunazarov.

(Doc. 41-6, p. 6; doc. 43-3, p. 3.)  Jones stated that, in observing Washington's tractor-trailer after the second collision involving Saunds, it appeared that any "damage to Mr. Washington's lights at the rear of his trailer were caused by the accident."  (Doc. 41-6, p. 4; doc. 43-3, p. 2.)  Jones also stated that, based on his observations at the scene of the second wreck, "Saunds did not seem to stop, slow down, or attempt to avoid the crash."  (Doc. 41-6, p. 4; doc. 43-3, p. 3.)  Plaintiff, on the other hand, has stated that she "believes that the lighting on the rear of [] Washington's tractor trailer was turned off, damaged, and/or malfunctioning at the time of the [second] accident" and that "Mr. Saunds was unable to ascertain that [] Washington's vehicle had come to a stop due to these inoperable lights."  (Doc. 41-6, pp. 2–3; doc. 43-3, p. 2.)

## II.     Procedural History

Plaintiff filed this action in the State Court of Liberty County, Georgia.  (Doc. 1-1.)  Defendants Abdunazarov and Brex Trans subsequently removed the action to this Court on the basis of diversity jurisdiction. (Doc. 1.)  Thereafter, Defendants Abdunazarov, Brex Trans, and National Continental Insurance Company filed their at-issue Motion for Summary Judgment as to all of Plaintiff's claims against them.  (Doc. 41.)  Plaintiff filed a Response, (doc. 43), and Defendants filed a Reply, (doc. 47).  Since then, Defendants Washington, Zurich American Insurance Company, and Jim Bender, Inc., have been dismissed with the consent of all parties.  (Doc. 46.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). The moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not

permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

Defendants assert that Mr. Saunds's own negligence is "the only reasonable explanation" for what caused the second collision. (Doc. 41, p. 19.) According to Defendants, summary judgment is therefore warranted either because there is no genuine factual dispute over causation or because the affirmative defense of comparative negligence bars Plaintiff from recovery. (Id. at pp. 10–19.) For the reasons below, the Court rejects Defendants' arguments and **DENIES** their Motion for Summary Judgment.

A defendant can obtain summary judgment either by showing there is no dispute of fact on an essential element of the plaintiff's claim, or by demonstrating that an affirmative defense bars the plaintiff's recovery as a matter of law. See, e.g., Garrett v. NationsBank, N.A. (S.), 491 S.E.2d 158, 161–62 (Ga. Ct. App. 1997) ("[E]ven if the defendant is unable or does not attempt to pierce the plaintiff's pleadings, it may still prevail at summary judgment by presenting evidence which establishes a prima facie affirmative defense."). Here, Defendants argue for summary judgment under both theories. First, they assert Plaintiff has failed to put forth any evidence that Defendants' conduct caused the second collision—an essential element of Plaintiff's negligence claim. (Doc. 41, pp. 16–17.) Second, they argue the affirmative defense of comparative negligence bars Plaintiff's ability to recover because the record indisputably shows that Mr. Saunds's own negligence was more than fifty percent responsible for the injuries. (Id. at pp. 10–16.) The Court will consider each argument in turn.

**I.    Whether Plaintiff has Established a Genuine Dispute of Fact on Causation**

For a negligence claim governed by Georgia law to survive summary judgment, the record must contain sufficient evidence to create a dispute of fact on whether the defendant's conduct was both a cause-in-fact and a proximate cause of the plaintiff's injury.[1] Atl. Obstetrics & Gynecology Grp. v. Coleman, 398 S.E.2d 16, 17 (Ga. 1990) ("To recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury."). As best the Court can tell, Defendants argue there is no factual dispute on proximate cause because Abdunazarov's initial collision was too remote from the later collision that killed Mr. Saunds, and because Mr. Saunds's own negligence was the intervening cause of the second collision.[2] (Doc. 41, pp. 16–19; doc. 47, pp. 6–8.)

The proximate cause requirement "constitutes a limit on legal liability" when the "defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." Reed v. Carolina Cas. Ins. Co., 762 S.E.2d 90, 93 (Ga. Ct. App. 2014) (quoting Delta Airlines, Inc. v. Townsend, 614 S.E.2d 745, 749 (Ga. 2005)). Typically, a defendant's negligence is the proximate cause of a plaintiff's injury when the defendant "should have anticipated that [the]

---

[1] To state a negligence claim, plaintiffs must create a factual dispute on the following essential elements: "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." Sheats v. Kroger Co., 805 S.E.2d 121, 130 (Ga. Ct. App. 2017). Here, Defendants only challenge causation.

[2] While some Georgia courts ruling on summary judgment treat the "intervening cause" doctrine as a method by which defendants can show there is no dispute on an essential element of the plaintiff's claim, others consider it an affirmative defense. Compare Reed v. Carolina Cas. Ins. Co., 762 S.E.2d 90, 93 (Ga. Ct. App. 2014) (considering defendants' intervening cause arguments as effort to disprove causation), with R & R Insulation Servs., Inc. v. Royal Indem. Co., 705 S.E.2d 223, 237 (Ga. Ct. App. 2010) (describing intervening cause doctrine as affirmative defense). Defendants' frame their "intervening cause" arguments, at least in part, under both theories. (See doc. 41, pp. 10–19; doc. 47, p. 8.) The Court opts to consider "intervening cause" through the framework of causation because doing so aligns with authoritative analysis from factually similar cases. See, e.g., Smith v. Com. Transp., Inc., 470 S.E.2d 446, 448 (Ga. Ct. App. 1996) (assessing intervening cause argument through causation framework under similar facts). At any rate—whether asserted to disprove causation or as an affirmative defense—Defendants' intervening cause arguments fail to warrant summary judgment.

general type of harm might result" from their negligent conduct. Smith v. Com. Transp., Inc., 470 S.E.2d 446, 448 (Ga. Ct. App. 1996) (citing Gen. Motors Corp. v. Davis, 233 S.E.2d 825, 827 (Ga. Ct. App. 1977)). One method for disproving proximate cause is the "doctrine of intervening causes." See City of Richmond Hill v. Maia, 800 S.E.2d 573, 576 (Ga. 2017). Under this doctrine, "there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury." Id. at 576–77 (quoting McQuaig v. McLaughlin, 440 S.E.2d 499, 502–03 (Ga. Ct. App. 1994)). An intervening act does not defeat proximate cause, however, "if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer." Reed, 762 S.E.2d at 93 (internal quotation omitted).

When considering, in particular, whether evidence of an intervening cause warrants summary judgment, courts must be mindful that "[d]eterminations of proximate cause are for the jury, and may be taken away from the jury *only* if the situation is so clear that reasonable minds could not differ." Smith, 470 S.E.2d at 448; see also Reed, 762 S.E.2d at 93 ("What amounts to proximate cause is undeniably a jury question." (quoting Zwiren v. Thompson, 578 S.E.2d 862, 865 (Ga. 2003))); Brown v. SSA Atl., LLC, No. 4:19-cv-00303, 2021 WL 3376827, at *6 (S.D. Ga. Aug. 3, 2021) ("[Q]uestions of negligence, contributory negligence, cause and proximate cause, whose negligence, what negligence, including lack of care in avoiding the consequences of another's negligence, are, except in plain, palpable and indisputable cases, solely for jury determination." (quoting DeWaters v. City of Atlanta, 311 S.E.2d 232, 235 (Ga. Ct. App. 1983))). Courts accordingly should only grant summary judgment on these grounds if the record makes it "plain, palpable, and indisputable" that an act of intervening negligence was the sole proximate

cause of the plaintiff's injuries.  Id.; see also Smith, 470 S.E.2d at 448–49 (reversing summary judgment based on intervening negligence in similar circumstances).

Defendants offer several arguments for why there is no factual dispute on causation.[3] Defendants assert it was unforeseeable that it would take responders more than six hours to clear Interstate 95 after Abdunazarov's initial collision—especially given that the responding officers "kept one lane of traffic open for all but possibly a very short period of time." (Doc. 41, pp. 17–19.)  According to Defendants, their conduct is thereby too remote from Plaintiff's injuries for there to be a dispute on proximate cause because Defendants could not have anticipated the first collision around midnight would result in the prolonged traffic jam and, ultimately, the second collision which killed the decedent at 6:28 a.m.  (Id.)

Defendants also argue any liability is "cut off" by Mr. Saunds's own intervening negligence, which they assert the record indisputably demonstrates was the sole proximate cause of the second collision.  (Id. at p. 17.)  This theory emphasizes that, although Washington was likely stopped with his emergency flashers visible for a considerable time, nothing at the crash scene indicated Mr. Saunds tried to avoid driving into Washington's trailer at full speed.  (Id. at pp. 3–7, 10–11, 19–20.)  Therefore, according to Defendants, "the only reasonable explanation" for the second collision "is that Mr. Saunds was distracted or was asleep." (Id. at pp. 11, 19.) Because Defendants supposedly could not have anticipated this intervening negligence by Mr. Saunds, there is no genuine dispute of fact on proximate cause.  (Id. at p. 19.)

The Court rejects Defendants' causation arguments.  Under Georgia law, whether a defendant's negligence is the proximate cause of a plaintiff's injury is a question of fact—even if

---

[3] Defendants focus heavily on the argument that there is insufficient evidence to show that any negligence on Washington's part was a cause-in-fact of the second collision. (Doc. 41, p. 17.)  Even if the Court were willing to assume that Washington bore no fault in the second collision, this would not establish, as a matter of law, that *Defendants* were not at fault for that collision.

the negligent act is "static and complete" when the injury occurs, and the injury is "'remote' in terms of time and space" from the original conduct. Harrison v. Jenkins, 510 S.E.2d 345, 348 (Ga. Ct. App. 1998); Smith, 470 S.E.2d at 448–49. Moreover, the occurrence of an intervening negligent act in the time between the defendant's negligence and the plaintiff's eventual injury does not remove the proximate cause inquiry from the jury so long as "the original negligent actor should have anticipated that [the plaintiff's] general type of harm might result." Smith, 470 S.E.2d at 448 (citing Gen. Motors Corp. v. Davis, 233 S.E.2d 825, 827 (Ga. Ct. App. 1977)). Georgia courts, observing these principles, have plainly established that "one who is negligent in blocking or obstructing a roadway, whether by turning, stopping, braking, backing, overturning, colliding, etc., is not relieved of the injurious consequences inflicted by the negligence of another motorist encountering the obstruction." Smith, 470 S.E.2d at 448 (quoting Perry v. Lyons, 183 S.E.2d 467, 470 (Ga. Ct. App. 1971)).

Both parties identify an opinion that addresses facts much like those here: Smith v. Commercial Transportation, Inc. 470 S.E.2d at 446. In Smith, a trucker caused an accident on Interstate 75. Id. at 447. Six hours later, a second driver approached the resulting traffic jam in cruise control and "failed to notice that the vehicles in front of him were slowing down, and struck the rear of another tractor-trailer." Id. at 447–48. When passengers from the second vehicle brought a negligence action against the original trucker, the trial court found the second driver's negligence was the sole proximate cause of the passengers' injuries and granted the trucker's motion for summary judgment. Id. at 448. The Georgia Court of Appeals reversed, finding that a lack of proximate cause between the first collision and the passengers' injuries was not "so clear that reasonable minds could not differ." Id. The court observed that, "while the five to six hours and two miles separating the accidents" were relevant to proximate cause, those "remoteness"

9

considerations were not decisive because a reasonable jury could have concluded the extended time required to clear the interstate was reasonably foreseeable. Id. at 448–49. Furthermore, even if the record suggested the second driver's negligence contributed to the passengers' injuries, "it would be difficult to state that the possibility of subsequent collisions following an initial accident blocking the road is absolutely not foreseeable." Id. at 448. Because the trucker therefore "should have anticipated . . . [the] general type of harm" that resulted, evidence of the second driver's intervening negligence did not cut off proximate cause for sake of summary judgment. Id.

Smith confirms that a factual dispute on proximate cause exists under Georgia law when a defendant's automobile collision creates a traffic jam and, even hours later, the plaintiff collides with that traffic. The Georgia Court of Appeals has continued to hold this way in similar cases. See, e.g., Ga. Dept. of Transp. v. Owens, 766 S.E.2d 569, 577 (Ga. Ct. App. 2014) (quoting Smith in support of conclusion that "[w]e cannot say that it was unforeseeable as a matter of law [to the contractor performing work on the roadway at night] that a vehicle, including one that was speeding or proceeding with less than due care, might collide with a dump truck proceeding well below the speed limit on the interstate in the early morning darkness"); Granger v. MST Transp., LLC, 764 S.E.2d 872, 875 (Ga. Ct. App. 2014) (quoting Smith). The factual dispute, moreover, continues to exist even if the record contains evidence that separate acts of negligence contributed to the second collision. Applying these principles here, nothing in the record warrants summary judgment on the basis of causation. The six-hour period required for responders to clear the road after Defendants' initial collision, like in Smith, was foreseeable—even if the open lane suggests the cleanup was overly long. Despite suggestions that Mr. Saunds may have negligently caused the collision with Washington by falling asleep, the Court cannot say the "general type of harm" represented by Mr. Saunds's collision was an "absolutely not foreseeable" result of the first

collision involving Abdunazarov. Smith, 470 S.E.2d at 448; see also Hayes v. Crawford, 730 S.E.2d 26, 29 (Ga. Ct. App. 2012) (factual dispute on proximate cause existed even though responding officer concluded third party's negligence was sole cause of collision). Neither "remoteness" nor the alleged intervening negligence between the first and second collisions make it "plain, palpable, and indisputable" that Defendants did not proximately cause Plaintiff's injuries. Brown, 2021 WL 3376827, at *6. The Court accordingly cannot remove the proximate cause determination from the jury.

Defendants' attempts to distinguish Smith are unavailing. Defendants first observe that here, unlike in Smith, a lane of the interstate was allegedly unoccupied when the second collision occurred, and the decedent could have avoided the collision by driving in that lane. (Doc. 41, pp. 18–19.) But the "nature and degree" of an intervening act of negligence is irrelevant to the proximate cause inquiry on summary judgment so long as the "general type of harm" was foreseeable. Smith, 470 S.E.2d at 448. The general type of harm that occurred here, regardless of whether one lane was unoccupied, is the same as in Smith: a "subsequent collision[] following an initial accident blocking the road." Id. Because that harm was a foreseeable result of the first collision, there is not sufficient evidence of intervening negligence to foreclose a factual dispute on causation.

Defendants lastly assert that "the identity of the parties is very different in the case at bar" than in Smith. (Doc. 41, p. 18.) Whereas Smith concerned an act of intervening negligence by a non-party driver, this case concerns intervening negligence by the decedent represented by Plaintiff. Id. This is not a meaningful distinction. The intervening cause doctrine contemplates negligence by anyone "other than the defendant" and the effect of that conduct on the defendant's ability to foresee the plaintiff's injury. Maia, 800 S.E.2d at 576. The particular identity of an

intervening actor is of no consequence.  The Court therefore rejects Defendants' arguments and finds that a genuine dispute of fact exists whether Defendants' conduct caused the Saunds' injuries.

### II.     Whether Comparative Negligence Bars Plaintiff's Claims as a Matter of Law

Defendants also argue that summary judgment is warranted because the affirmative defense of comparative negligence bars Plaintiff's ability to recover.  (Doc. 41, pp. 10–16.)  Besides showing a plaintiff has failed to create a factual dispute on an essential element of their claim, defendants may also obtain summary judgment by "presenting evidence to support each element of [an] affirmative defense." Garrett, 491 S.E.2d at 162.  The affirmative defense of comparative negligence bars recovery when the defendant shows that "the plaintiff is 50 percent or more responsible for the injury or damages claimed." O.C.G.A. § 51-12-33(g).  In theory, this defense provides negligence defendants with a less demanding method for obtaining summary judgment than the doctrine of intervening cause—which requires that the plaintiff's negligence be the "*sole* proximate cause of the injury." Cieplinski v. Caldwell Elec. Contrs., Inc., 633 S.E.2d 646, 652 (Ga. Ct. App. 2006) (emphasis added).  Even still, because the comparative negligence defense (like the intervening cause doctrine) implicates "questions of negligence, diligence, contributory negligence and proximate cause [which] are peculiarly matters for the jury," Reed, 762 S.E.2d at 92 (quoting Bussey v. Dawson, 160 S.E.2d 834, 836 (Ga. 1968)), courts routinely decline to supplant the jury by granting summary judgment on the basis of comparative negligence unless it is "plain and indisputable" that the plaintiff was fifty percent or more responsible for his own injuries. Id. at 94; see also Storer Commc'ns v. Burns, 393 S.E.2d 92, 94 (Ga. Ct. App. 1990) ("Because these questions [regarding comparative negligence] do not have 'plain and indisputable' answers under the evidence of record and must be resolved by a jury, the denial of appellants' motion for summary judgment is affirmed.").

Defendants' arguments for summary judgment based on comparative negligence are mostly the same as their intervening cause arguments. Defendants aver that the decedent failed to exercise ordinary care to prevent an injury to himself or to avoid the consequences of Defendants' negligence. (Doc. 41, pp. 10–16.) Defendants accordingly insist that, even if Plaintiff's intervening act does not cut off proximate cause, Plaintiff still cannot recover "under the doctrine of comparative negligence" because the decedent's own negligence is "equal to or greater than fifty percent" responsible for the injuries. (Id. at p. 15.)

The Court rejects Defendants' arguments and finds the record does not show that, as a matter of law, Mr. Saunds was at least fifty percent responsible for the second collision. Georgia opinions addressing similar automobile collisions indicate that whether a decedent was fifty percent or more at fault for their injuries is a question of fact except in the rarest of instances. For example, in Reed v. Carolina Casualty Insurance Co., a trucking employee illegally parked his trailer on the shoulder of a highway and, an hour later, a teenager collided with the trailer and died. 762 S.E.2d at 92. Responding officers stated that, because he was traveling too fast and had been drinking alcohol, the teenager lost control of his car and collided with a guardrail before eventually hitting the trailer. Id. The trial court granted summary judgment on grounds that it was "plain and palpable that [the teenager's] own negligence was equal to or greater than that of defendant," but the Georgia Court of Appeals reversed. Id. at 93, 95. According to the court, it was "reasonably foreseeable that another motorist might negligently lose control of his vehicle . . . and strike a tractor-trailer parked in the emergency lane." Id. at 95. Because the evidence showed that both the defendant employee and the plaintiff teenager were negligent, it was not "plain and indisputable" that the teenager was "50 percent or more at fault," and there was a factual dispute

on comparative negligence.  Id.; see also Burns, 393 S.E.2d at 94 (no summary judgment on comparative negligence grounds where record contained evidence of negligence by both parties).

The only case Defendants cite where a Georgia court upheld summary judgment based on a plaintiff's comparative fault is meaningfully distinct from the facts here.  (See doc. 41, pp. 11–14.)  In that case, Garrett v. NationsBank, N.A. (South), a bank customer negligently jumped from her car and slipped on ice in the bank's driveway.  491 S.E.2d at 160–61.  The Georgia Court of Appeals emphasized that the affirmative defense of contributory negligence "is present in most slip and fall cases and other premises liability cases."  Id. at 162.  In affirming summary judgment, the Court found that, based on the testimony and other evidence before it, "[t]he sole proximate cause of appellant's fall" was her own active negligence, in choosing to run through the parking lot "while looking only at her money, when she was aware of the bad weather conditions with some snow, ice, and water on the ground," which "she should have known [presented] the risk of the pavement being slick and dangerous to someone running."  Id. at 164.

The facts of this case, taken in the light most favorable to Plaintiff, are more analogous to Reed than Garrett.  Additionally, the Garrett opinion was written in 1997 and, several months after it was published, the Supreme Court of Georgia, in another slip and fall case, pointedly took time to "remind members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are *generally not susceptible of summary adjudication*, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed."  Robinson v. Kroger Co., 493 S.E.2d 403, 414 (1997) (emphasis added).  The Reed Opinion was written seven years later, and thus is a more accurate reflection of how Georgia appellate courts expect trial courts to handle summary judgment motions based on a comparative negligence defense.  As it is not "plain and

14

palpable" that the decedent was at least fifty percent at fault for his loss, the Court denies Defendants' request for summary judgment on comparative negligence grounds.

## CONCLUSION

For all these reasons, the Court **DENIES** Defendants Rasuljon Abdunazarov, Brex Trans, Inc., and National Continental Insurance Company's Motion for Summary Judgment.  (Doc. 41.)

**SO ORDERED**, this 6th day of January, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA